IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

# WESTERN DIVISION.

JACKSON,............:.., APRIL TERM, 1882.

J. A. ANDERSON, Adm'r. *v.* J. J. AMMONETT *et al.*

1. LEASE. *Lien for improvements passes to assignee.* A stipulation in a lease for the valuation, at the end of the term, of any improvements made by the lessee, and for a lien on the improvements for the amount of the valuation, if not paid by the lessor, shall pass to an assignee of the lease.

2. CHANCERY PLEADINGS AND PRACTICE. *Infant. Bona fide purchaser.* A decree of a court of chancery confirming a lease of an infant's realty is so far binding on the infant, that he cannot, by a bill of review, an original bill or other proceeding, impeach it to the prejudice of a *bona fide* purchaser for value, of the leasehold interest, before suit brought

3. SAME. *Equities. Prior and junior. Assignee.* The rule in this State, except when changed by statute, or in deference to statutory policy is, that a prior equity will prevail over a junior equity and the legal title with notice, or over the legal title of a volunteer with or without notice, and a purchaser in satisfaction of a pre-existing debt, and an assignee in trust to secure such a debt have always been treated, under the rule, as volunteers.

1—VOL. 9.

Anderson, Adm'r. *v.* Ammonett.

4. LEASE. *Assignment. Infant. Equities.* The equity, therefore, of an
   infant growing out of the fraud of the lessee in procuring a lease and
   a decree of court sanctioning the lease, is superior to the rights of a
   beneficiary under an assignment of the lease and leasehold interests
   to secure a pre-existing debt.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. W.
W. McDowell, Ch.

Calvin Vance and R. J. Morgan for complian-
ants.

Humes & Poston, Jarnagin & Frayser and Big-
elow & Hill for defendants.

Cooper, J., delivered the opinion of the court.

On the 1st of January, 1857, Martha P. Talbot,
the guardian of her infant children, Mary H. and
Delia W. Talbot, undertook to lease to J. M. Pro-
vine and E. P. Stewart, certain lots in the city of
Memphis, owned by her children in severalty.    Two
separate instruments were drawn up and executed by
the parties, one covering the lots of Mary, and the
other the lots of Delia.    They were substantially alike,
except that the term of the lease of the land of the
first named daughter was eleven years, and the term
of the other lease thirteen years.    The lessees agreed,
on their part, to pay a ground rent mentioned, an-
nually, and all taxes and public charges levied during
the term.    There was no stipulation on their part to

make improvements, but each lease contained the following provisions: "At the expiration of the aforesaid term, the buildings and improvements on each lot of ground are to be vaulued by two competent and disinterested men, and the valuation thereof at the time is to be allowed to the said Provine and Stewart, or their assigns, and, upon the payment of the said valuation, the said Provine and Stewart, or their assigns, are to deliver up possession of said lots and improvements. In the event that the said valuation is not paid to Provine and Stewart, or their assigns, a lien is hereby retained on said improvements for said valuation." Afterwards Provine and Stewart filed a bill in the chancery court against the guardian and wards to obtain the approval of the court to these leases. Such proceedings were had in the cause that on the 19th of January, 1859, a decree was rendered, "that the said leases be sanctioned, ratified and confirmed, and become valid and binding, as well upon the said minors and their estates as upon the complainants."

On September 1, 1859, Provine and Stewart, by deed of trust of that date, conveyed to Sylvester Bailey "the said several messuages or tenements and premises," so leased to them, "with all improvements and appurtenances, and also, all the estate, rights, titles, interest, terms of years yet to come and unexpired, property, claim and demand whatever of them the said J. M. Provine and E. P. Stewart, or either of them, of, in and to the same, or of, in and to any part or parcel of all and every of the aforesaid premises, together with the said several leases themselves." This

conveyance was made to secure a large debt of about $56,000 due to the estate of Geo. P. Cooper, deceased, for money borrowed either to improve the leasehold property, or to pay for improvements already made. And the trustee was authorized, at the maturity of the notes given to secure the debt, to sell "the premises for cash in satisfaction thereof." On the 17th of June, 1865, the trust deed was foreclosed by a sale for the unpaid debt, and the "several leases, lots and premises, and terms thereon, together with the tenements, improvements, privileges and appurtenances thereto belonging, and all the estate, interest, claim and rights thereto as fully as the same were vested in the trustee by the trust deed," were sold and conveyed to J. M. Provine at the price of $43,907.80, "being the balance then due from Provine and Stewart." By agreement with the representative of Cooper's estate, Provine gave his four notes of $10,976.90 each, at one, two, three and four years, with interest, for the purchase price, and secured the same by a conveyance of that date to W. B. Waldren, as trustee of "all the right, title, estate and interest had, held, owned and enjoyed by J. M. Provine and E. P. Stewart," in the leased lots, and "also all the rights, interests, powers and privileges had, held, owned and claimed by said Provine and Stewart in regard to said lots and the improvements thereon, under and by virtue of the leases and decree of the chancery court confirming the same." The trustee was authorized, among other things, to sell for cash, free from any equity of redemption, upon default of payment.

On January 11, 1868, Mary H. Talbot, who had come of age, filed her bill against J. M. Provine, for the purpose of reviewing, setting aside and vacating the decree confirming the lease made by her guardian, and asking that the lease be declared void, and she be restored to the possession of her property. Delia W. Talbot subsequently filed a similar bill. Such proceedings were had in these cases, heard together, that finally, by a decree of this court, at its April term, 1874, the contracts of leases, and the decrees confirming them, were set aside, because of the failure of Provine to disclose to the court the fact that he had been employed by the guardian to lease the lots, the concealment operating as fraud upon the minors. But the court declined to hold the lessees to an account for rents and profits, unless they should elect to claim for improvements, in which event the account might be taken. Provine having died, his administrator declined to go into an account, and waived all claim for improvements, whereupon a final decree was rendered in favor of the complainants, and they were confirmed in the possession of the property.

The chancellor had reached a different conclusion in these cases, and had found that the complainant, Mary H., was indebted to Provine in the sum of $13,365 for improvements, and that Delia W. indebted to him in the sum of $10,921. Pending the appeal from these decrees in this court, on the 13th of June, 1873, the original bill in the cause now before us was filed. The bill was filed by J. A. Anderson, as administrator *de bonis non*, with the will annexed, of

Geo. P. Cooper, deceased, against J. J. Ammonett, administrator of J. M. Provine, deceased, John P. Hillsman and Mary H., his wife, formerly Mary H. Talbot, Robert C. Williamson and Delia W., his wife, formerly Delia W. Talbot, W. B. Waldren, and James T. Pettit, the latter as the successor of Waldren as trustee, under the last trust assignment of the leasehold property by Provine, and others. The bill set out the indebtedness of Provine to the estate of Geo. P. Cooper by the execution of the notes of the 17th of June, 1865, and the conveyance of the leasehold property by him on the same day to W. B. Waldren, in trust, to secure the notes; and stated that two of the notes had been paid, leaving the other two unpaid; that Waldren had refused to execute the trust, and proceedings had been instituted to remove him, which had, after long litigation, been successful, and that defendant Pettit had been appointed in his place, who, however, was unwilling to give the security required to enable him to execute the trust. The bill then further set out the institution by Provine of the suit against Mary H. and Delia W., and the recovery therein had in the chancery court as above mentioned, and that the suit was then pending in the Supreme Court, and asked that the recovery should be applied to the payment of the notes due to the Cooper estate. On the 6th of October, 1874, an amended bill was filed. The decree of the chancellor in the suits of Mary H. and Delia W. against Provine, having been then reversed in this court, the object of the amended bill was to have a valuation made

of the improvements on the leased lots at the coming of age of the minors, and the appropriation of that valuation to the satisfaction of Provine's notes.

Hillsman and wife, and Williamson and wife demurrered to the bill as amended, upon the ground, among others, that Stewart was a necessary party, the bills not showing any alienation of his interests, and that the bills failed to show the terms of original lease. The demurrers were overruled, with leave to the defendants to rely upon the two matters of demurrer mentioned, unless the bills were amended. Thereupon, a second amended bill was filed. The bill set out the original lease made by the guardian to Provine and Stewart, and the proceedings in the chancery court confirmatory thereof. It further stated, the loan of the money by the Cooper estate to Provine and Stewart, the execution by them of the trust deed to Bailey, the foreclosure of the trust, and the purchase by Provine at the sale, whereby he became the sole owner of the leasehold interests. Stewart was not made a party defendant.

To the complainant's bill as thus amended, the defendants, Hillsman and wife and Williamson and wife filed a plea setting forth the proceedings and final decree in the suit of themselves against Provine as an adjudication of the matters of controversy in their favor. They also pleaded that the cause of action occurred more than six years before the filing of the bill. The chancellor was of opinion that the defenses should be made by answer, and overruled the pleas. The defendants then answered, filing their answer as

a cross-bill repeating the matters of the pleas, and asking that the complainant, in the event he recovered the value of the improvements, be held liable for the rent received by Provine. The chancellor, on final hearing, dismissed the bill, and the complainant appealed.

Mary H. Talbot, now Hillsman, came of age on the 13th of January, 1867, and Delia W. Talbot, now Williamson, came of age on the 30th of March, 1869. In the decision of their suits against Provine, brought after they had respectively arrived of age, this court was of opinion that the decree confirming the leases contained all the recitals necessary to give the court jurisdiction, and that there was no error in the proceedings which could be reached by a bill of review. The court was further of opinion that the bill might be treated as an original bill to set aside the decree for fraud in its procurement, and that there was sufficient fraud for this purpose in the conduct of Provine, in concealing from the court the fiduciary relation in which he stood to the parties: *Talbot* v. *Provine*, 7 Baxt., 502. The complainants were, therefore, restored to the possession of the property, the defendant, Provine, waiving any account for improvements. The present defendants can, consequently, claim that the adjudication of the court in that case was, and is conclusive as between them and Provine. For, whatever rights may have been acquired under the trust assignment of Provine and Stewart, the original equity again attached to the leasehold estate when revested in Provine by the foreclosure sale: *Armstrong* v. *Camp-*

*bell*, 3 Yer., 201; *Kennedy* v. *Daly*, 1 Scho. &. Lef., 379. Unless the complainant occupies a higher vantage ground, the adjudication must be equally conclusive on him.

The original leases were loosely worded. It was noticed in the former opinion of this court that they contained no obligation on the part of the lessees to make any improvements on the leased premises. It is equally noticeable that they contain no obligation on the part of either the guardian or ward to pay for the improvements which might be made. Each lease merely provides for the valuation of any improvements at the expiration of the term, and for a surrender of the premises upon the payment thereof, retaining a lien on the improvements for the amount of the valuation if not paid. The guardian could not have bound the ward for the payment of the improvements: *Barrett* v. *Cocke*, 12 Heis., 566; Code, sec. 2515. And the court, by its decree confirming the leases, has not done so. It is entirely optionary with the reversioners to pay the valuation. There is clearly no lien in favor of the lessees on the land. The only lien is on the improvements. The stipulations of these leases may be considered as analogous to the usual stipulation in favor of the lessee of the right to remove the improvements: *Allen* v. *Dent*, 4 Lea, 676; *Cheatham* v. *Plinke*, 1 Tenn. Ch., 576; *Hite* v. *Park*, 2 Tenn. Ch., 373. Such stipulations would, probably run with the land: *Van Rensselaer* v. *Penniman*, 6 Wend., 569; *Holmam* v. *Abrams*, 2 Duer, 435.

It is expressly agreed by the parties that the per-

sonal representative of Geo. P. Cooper's estate, loaned
to Provine and Stewart a large amount of money for
the purpose of enabling them to erect the building on
the leased lots, and that the money was so used. It
was further agreed that at the time of the loaning,
and at the time of taking from Provine and Stewart
the trust assignment of September 1, 1859, and from
Provine the trust assignment of June 17, 1865, the
personal representative of Cooper had no knowleldge or
information that Provine was, or had been the agent
of the guardian to rent the lots, or of any of the
circumstances tending to establish the fraud on his part
for which the leases and the decrees confirming them,
were set aside. It is not agreed, nor does it any-
where appear by proof, that the money was loaned in
consideration of the execution of the trust assignment,
or contemporaneously therewith. On the contrary, it
clearly appears that the improvements were completed
in the summer and fall of 1857. The fair inference
is, that the trust assignment was made to secure a
debt already in existence, upon the execution of notes
of even date having from one to five years to run.
This trust deed was foreclosed, June 17, 1865, by a
sale, at which Provine became the purchaser at the
price of $43,907.80, "being," says the agreed state-
ment of facts, "the balance then due from Provine
and Stewart," to the personal representative of Cooper's
estate. The property was duly conveyed to him by
the trustee, he, by agreement with the personal repre-
sentative, giving his four notes on time for the pur-
chase money, and executing the assignment to Wal-

dren to secure their payment. The present bill is filed to obtain the benefit of the assignment to the extent of the lien secured by the leases for the payment of the valuation of the improvements. And the complainant claims that he is entitled to this relief, notwithstanding the decree setting aside the leases for fraud, because he was a *bona fide* purchaser of the leasehold property for value and without notice, before the commencement of the suit in which that decree was rendered.

The weight of authority undoubted is, that a decree for the sale of an infant's land, in a case in which he is a party, and over which the court has jurisdiction, is so far binding on the infant that he cannot, either by a bill of review, or by an original bill, or other proceeding, impeach it to the prejudice of the rights and interests of a *bona fide* purchaser for value, and without notice of the error: *Winchester* v. *Winchester*, 1 Head, 500; *Livingston* v. *Noe*, 1 Lea, 66; *Bennett* v. *Hamill*, 2 Scho. & Lef., 575; *Wright* v. *Miller*, 1 Sandf. Ch., 103. The same rule would apply to a decree sanctioning a lease of the infant's land, the lease being *pro tanto* a sale. Our act of 1835, ch. 20, sec. 16, brought into the Code, sec. 3186, which provides that the title of a purchaser under a judgment or decree, executed before writ of error obtained and *supersedeas* granted, shall not be disturbed by the subsequent reversal, is in affirmance of the common law: *Lewis* v. *Baker*, 1 Head, 385; Freem. on Judg., sec. 484. The reason is, that innocent third persons cannot be expected to look out-

side of the proceedings of courts of general jurisdiction, and have a right to assume that their judgments and decrees, in all cases in which they have jurisdiction of the parties and the subject-matter, are regular and valid. Fraud in the procurement of private contracts, while it authorizes the injured party to avoid the contract, leaves the contract in force until such party elects to avoid it, and will not affect the title of an immediate innocent purchaser from the fraudulent vendee: *Arendale* v. *Morgan*, 5 Sneed, 703; *Hawkins* v. *Davis*, 5 Baxt., 698; S. C., 8 Baxt., 506. And, *a fortiori*, must the rule apply to contracts or results worked through the instrumentality of courts of justice in the passing of title to property.

The conclusion reached in *Talbot* v. *Provine* was, that the court of chancery, by virtue of its general jurisdiction over the person and estate of infants, could direct the sale of their realty, and consequently, sanction a lease thereof for a definite period; that the court, under the proceedings instituted to confirm the leases, had jurisdiction of the person of the infants and of the subject-matter; and that the decree of confirmaation was valid on its face. The fraud, for which the contract was set aside as between the parties, was made out by proof outside of the record. If, therefore, the complainant is a *bona fide* purchaser for value and without notice, within the meaning of the rule, he would not be affected by the avoidance of the contracts of lease by proceedings instituted after his rights were acquired. And it may be conceded that he is a purchaser, having the legal title of the lease-

hold property in dispute through the trustee in the assignment, and without notice of the equity of the defendants. Is he also a purchaser for a valuable consideration within the rule?

The protection conceded to a *bona fide* purchaser for value is carefully guarded, for the obvious reason that it operates to the injury of the rightful owner who may be equally innocent and equally meritorious. It is surrounded by restrictions, sometimes of a technical or arbitrary character, so as to prevent it from becoming a cloak to fraud. The rule in this State, except when changed by statute, or in deference to statutory policy, has always been that of the English court of chancery, that a prior equity would prevail over a junior equity and the legal title with notice, or over the legal title of a volunteer, with or without notice. And a purchaser, in satisfaction of a pre-existing debt, and, for a stronger reason, an assignee in trust to secure such a debt, have always been treated as volunteers. Accordingly, where a party entitled to redeem land was prevented from redeeming by the fraud of the purchaser, and the purchaser sold and conveyed the land to a third person in payment of a pre-existing debt, the equity of redemption was allowed to prevail over the title of the purchaser: *Guinn* v. *Locke*, 1 Head, 111. So, the equity of a vendee of land by parol to be paid, upon rescission, the purchase money, or the value of improvements, was held superior to the title of a purchaser of the land in satisfaction of a pre-existing debt: *Rhea* v. *Allison*, 3 Head, 177. And the rule, that the conveyance of

land in payment of a pre-existing debt does not en-
title the grantee to protection as an innocent purchaser,
has been re-enunciated in the recent case of *Jarman*
v. *Farley*, 7 Lea, 141. It follows, necessarily, that
an assignee under an assignment to secure pre-existing
debts cannot occupy any higher ground than an actual
purchaser in satisfaction of such a debt. In the case
therefore, of a constructive trust arising from the use
by a guardian of the funds of his ward in the pur-
chase of property, the ward's equity was held to pre-
vail over the title of such an assignee: *Turner* v. *Pet-
igrew*, 6 Hum., 438. So, of the equity of a claimant
under an unregistered contract for a mortgage on the
specific property: *Cook* v. *Cook*, 3 Head, 719. So, of
the vendor's equity for the unpaid purchase money of
land: *Brown* v. *Vanleer*, 7 Hum., 239. Of these last
two cases, the correctness of the first has been doubted,
and the second has been overruled in deference to the
supposed policy of our registration laws: *Simpkinson*
v. *McGee*, 4 Lea, 437; *Jones* v. *Ragland*, 4 Lea,
542. But these laws cannot possibly apply to an
equity neither within their terms nor their policy.
Such is a constructive trust or equity arising from fraud:
Perry on Trusts, sec. 217. Of course, where instru-
ments have actually been executed which are required
to be registered, and the rights of the parties turn
upon the priority of registration, the registry laws
necessarily apply: *Knowles* v. *Masterten*, 3 Hum., 619;
*Myers* v. *Ross*, 3 Head, 60; *Kirkpatrick* v. *Ward*, 5
Lea, 432; *Simpkinson* v. *McGee*, 4 Lea, 437.

The equity of the defendants in this case to be re-

stored to their lands because of the fraud of Provine is, therefore, an equity not within the purview or policy of the registration laws. It is a meritorious and substantial equity, which will prevail over the equity of a subsequent purchaser in satisfaction of a pre existing debt, and, *a fortiori*, of a trustee or beneficiary under an assignment to secure such a debt. Both parties are equally innocent and equally meritorious, and their rights, as between them, must be determined by the settled law applicable to such cases. The leased property was surrendered by Provine to Hillsman and wife on September 25, 1868, and to Williamson and wife on the 1st of April, 1870, under decrees of the chancery court, and writs of possession. Neither the personal representative of Cooper nor the trustees under the assignments had ever been in possession of the premises. Both of the assignments were made to secure pre-existing debts, and without, so far as appears, any consideration passing at the time. The only consideration which could be inferred from the facts and circumstances would be the consideration of the extension of time for which the notes secured in each instance had to run. The old notes and old assignment were not given, as argued by the learned counsel of the complainant, for the new notes and new assignment. They were simply extinguished by the foreclosure sale, as they would have been by a sale under a court decree, and the conveyance of the trustee to Provine recites that, by agreement of the parties, Provine executed his notes for the purchase money, instead of paying the cash. It does not ap-

pear that the time was given upon any consideration
other than the mutual interest of the parties.   A val-
uable  consideration  includes  not  only  some  valuable
thing or property paid or transferred, but also some
loss of property or right, or the forbearing of some
legal right or remedy : Perry on Trusts, sec. 220.
The mere giving of time, however, in a pre-existing
debt of itself can no more, in the case of a trust
assignment to secure it, be treated as a valuable con-
sideration, than the time which is necessarily given
when such a debt is satisfied by the conveyance of
property.   If the extension of time alone can ever be
treated as a valuable consideration within the rule of
a *bona fide* purchaser, it must be when it is expressly
bargained for.   No such case is made by this record.

Affirm the decree with costs.